1

2

3

4

5                                                                 Honorable Judge Robert S. Lasnik

6

7                          UNITED STATES DISTRICT COURT
                       FOR THE WESTERN DISTRICT OF WASHINGTON
8

9

ZAMBEZIA FILM (Pty.) Ltd.                    )
10                                           )
           Plaintiff,                        )
11                                           )
                                             )
12      v                                    )    Civil Case Nos.,
                                             )
13   DOES 1-47                               )    13-00307 JLR-RSL
     DOES 1-66                               )    13-00308 MJP-RSL
14   DOES 1-66                               )    13-00309 RAJ-RSL
     DOES 1-66                               )    13-00310 TSZ-RSL
15   DOES 1-66                               )    13-00311 RAJ-RSL
     DOES 1-70                               )    13-00312 JLR-RSL
16   DOES 1-48                               )    13-00013 RAJ-RSL
     DOES 1-58                               )    13-00014 JLR-RSL
17   DOES 1-51                               )    13-00315 RSM-RSL
     DOES 1-51                               )    13-00316 RSL
18   DOES 1-18                               )    13-00317 MJP RSL
     DOES 1-57                               )    13-00318 RSL
19   DOES 1-47                               )    13-00319 RSM-RSL
                                             )
20         Defendants.                       )
                                             )
21   _____)

22                  PLANTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

23   Plaintiffs Response Order to Show Cause                  Frontier Law Group, PLLC
     13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313    1001 4th Ave, Suite 3200
24   13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319   Seattle, WA 98154
                                                              Office: 206-682-7975

# I.  INTRODUCTION

On May 8, 2013, May 10, 2013 and May 15, 2013 the court issued Orders to Show Cause in the above-captioned cases.  The court ordered Zambezia Film (Pty.) Ltd., (hereinafter to be known as Zambezia) to (1) show cause why the above captioned matters should not be dismissed as to all Defendants other than Doe 1 in each case for improper joinder and requested that (2) the Plaintiff provide supplemental information regarding Plaintiffs copyright, members and stakeholders (exhibit 1) along with a summary and documentation of contact with alleged Doe's associated with these cases (exhibit 4).  Plaintiff has provided the documentation requested and responds that the cases should not be dismissed for improper joinder.  Plaintiff further recognizes the court's concern with respect to potential litigation abuse.  As such, Plaintiff reviews the legal and factual basis for joinder and the absence of any bad faith or nefarious conduct in the instant cases.

# II.  BACKGROUND

In the ever changing and evolving digital age that we live in, the plague of peer-to-peer copyright infringement such as complained of by Plaintiff is a serious issue[1] and continues to be a problem as the activity is on the rise nationwide.[2]  Indeed, the United States Congress, in direct response to the growing use of peer-to-peer technology to commit piracy, increased the statutory penalties from $100,000 to $150,000. 17 U.S.C. § 504(c).  Plaintiff has suffered great harm due to infringements committed by thousands of residents in the Western District of Washington and

[1] *Privacy and Piracy:* The Paradox of Illegal File Sharing on Peer-to-Peer Networks and the Impact of Technology on the Entertainment Industry: Hearing Before the Permanent Subcommittee on Investigations of the Sen. Comm. On Governmental Affairs, 108th Cong., 1st Sess. 10 (2003).
[2] See Google Tackles Piracy By Removing Millions of URLS  http://news.cnet.com/8301-1023_3-57441333-93/google-tackles-piracy-by-removing-millions-of-urls/#postComments and Google Transparency Report http://www.google.com/transparencyreport/removals/copyright/

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

had no option but to file suit to prevent the further widespread theft of its copyright "While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored."[3]

At the same time there is a permissive culture and a growing community which mocks copyright enforcement; as noted by Senator Levin, "many participants seem to consider it equivalent to jaywalking – illegal but no big deal." Testimony from *Privacy and Piracy, supra* fn. 1. BitTorrent sites which profit from this culture, such as The Pirate Bay, openly flaunt copyright violations by posting letters from rights holders and The Pirate Bay's defiant responses (exhibit 6) which are replete with profanity. Dec. Counsel ¶ 10 (exhibit 2). Online web pages and related communities have organized to distribute form motions to quash and to outline strategies which go beyond legitimate defenses and into the area of obstructing enforcement. The current "cookie-cutter" defense is claiming one's password secured Wi-Fi has been "hacked."

It is true that there is a growing number of enforcement suits across the county, but that should be expected when estimates indicate BitTorrent now has more users than Hulu® and Netflix® combined.[4] This increase in litigation is not Plaintiff driven, but is driven by infringers. Due to some fundamental logistics and the often misplaced perception that internet activity is somehow immune from repercussions, the whole system of enforcement and opposition has become so reactionary that filings often appear on the docket without a logical relation to the matter before the court. These filings are often based on supposition, anecdotes and other cases filed with other facts. In this context, Plaintiff Zambezia seeks to enforce its rights and stem the

---

[3] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html
[4] http://www.fastcompany.com/1714001/bittorrent-has-more-users-netflix-and-hulu-combined-and-doubled

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316; 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

1   continuing harm which is perpetrated against it by thousands of infringers in the most efficient

2   and fair manner in order to promote judicial economy by joining multiple Defendants.

3       The several complaints filed in this case include discussion on joinder by which Zambezia

4   notes: (1) that Zambezia's rights to relief ultimately arise from the same series of transactions

5   and occurrences; (2) that the complaint raises questions of law and fact common to all

6   Defendants; (3) the time period of infringement by all Defendants provides for continuous

7   seeding and distributing of the movie long after it has downloaded and (4) that permissive

8   joinder permits a more efficient management of Zambezia's claims which would reduce costs to

9   Zambezia and the Defendants and which would reduce costs and burdens on the court and

10  support judicial economy.

11      Motions to expedite discovery were granted by the Court on February 22, 2013 and February

12  25, 2013 permitting Zambezia to request via civil subpoena subscriber information from Internet

13  Service Providers (hereinafter to be known as "ISPs"). Pursuant to the Order, Zambezia began

14  serving the civil subpoenas on the ISPs. Suffice it to say, there were complications with

15  obtaining subscriber information. Specifically, the amount of time required by the several ISPs to

16  comply with notice requirements and respond to Zambezia's subpoenas has been more than

17  originally anticipated. (Dec.Counsel, ¶5, exhibit 2). Indeed, contact with alleged Doe

18  Defendants has been minimal to date in the scope of all cases filed to date by the Plaintiff.

19  (Dec.Counsel, ¶¶ 6-8, exhibit 2)

20      On May 08, 2013 and May 10, 2013 prior to the majority of the subpoena responses, the

21  Court issued an Order to Show Cause, quashing subpoena's originally submitted in this case.

22  Plaintiff herein responds specifically to the Order to Show Cause.

23  Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
24  13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

### III. JOINDER IS PROPER

Fed. R. Civ. P. 20 permits joinder when Plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all Plaintiffs will arise in 13-00278the action."   Rule 20(a) not only permits permissive joinder when there is the same transaction or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability.  Plaintiff has done both here and respectfully requests this Court to rule in line with other jurisdictions that have found joinder appropriate in copyright infringement BitTorrent actions.

### A.     The Infringement Occurred Through a Series of Transactions

For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder to be proper when there is something other than a direct transaction.  "Series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary. Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different but for each of the Defendants' infringements.

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

1    Judge Randon in the Eastern District of Michigan properly analyzed the facts in a near

2    identical case, expending substantial effort to understand the allegations in the complaint and the

3    applicable law.  This point of view was adopted very recently by Judge Hluchaniuk in <u>Malibu</u>

4    <u>Media v. John Does 1-30</u>, Civ. A. 12-13312, Doc. 61, (E.D. Mich. May 16, 2013).   Judge

5    Randon summarized the Plaintiff's allegation asserting that each Defendant copied the same

6    piece of the same file as follows:

7         Plaintiff alleges that its investigator ("IPP") was able to download at least one
          piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8–10). It is
8         important to understand the implications of this allegation before determining
          whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted
9         Movie from each Defendant (and, conversely, each Defendant uploaded at least
          one piece of the Movie to IPP) then each Defendant had at least one piece of the
10        Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her
          computer and allowed other peers to download pieces of the Movie. By way of
11        illustration: IPP's computer connected with a tracker, got the IP address of each of
          Defendants' computers, connected with each Defendants' computer, and
12        downloaded at least one piece of the Movie from each Defendants' computer.
          During this transaction, IPP's computer verified that each Defendants' piece of the
13        Movie had the expected Hash; otherwise, the download would not have occurred.
          <u>Patrick Collins, Inc. v. John Does 1-21</u>, Civ.A. 11-15232, 2012 WL 1190840, at
14        *4-5 (E.D. Mich. Apr. 5, 2012).

15        Significantly, Judge Randon then explained through the force of clear deductive logic

16   that each Defendant obtained the piece of Plaintiff's movie in one of four ways all of which

17   relate directly back to one individual seed.

18        If Plaintiffs allegations are true, each Defendant must have downloaded the
          piece(s) each had on his or her computer in one, or more, of the following four
19        ways:  1) the Defendant connected to and transferred a piece of the Movie **from
          the initial seeder;** or 2) the Defendant connected to and transferred a piece of the
20        Movie **from a seeder** who downloaded the completed file from the initial seeder
          or from other peers; or 3) the Defendant connected to and transferred a piece of
21        the Movie **from other Defendants** who downloaded from the initial seeder or
          from other peers; or 4) the Defendant connected to and transferred a piece of the
22        Movie **from other peers** who downloaded from other Defendants, other peers,
          other Seeders, or the Initial Seeder. In other words, in the universe of possible

transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP. Id.

Having limited the universe to four possibilities the court correctly concluded the transaction was logically related.

Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm. Id.

### i.   The Supreme Court Encourages Joinder

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).

In United States v. Mississippi, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six Defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote.  Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact. Id. at 142-143.

[T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316; 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

that would inevitably deprive colored people of the right to vote solely because of their color. On such an allegation the joinder of all the registrars as Defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure. Id. at 142.

Indeed, the Supreme Court held all of the Defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, it is not necessary for each of the Defendants to have directly interacted with each other Defendant, or have shared a piece of the file with each and every Defendant when downloading the movie. The Defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers. In doing so, the Defendants all acted under the same exact system. Just as it was not alleged in United States v. Mississippi that the registrars shared with each other their efforts to prevent African Americans from voting, it is not necessary for the Defendants to have shared the pieces of the movie with each other. It is sufficient that the Defendants shared pieces that originated from the same exact file, and opened their computer to allow others to connect and receive these pieces.

## B. There Are Common Issues of Fact and Law

Rule 20(a)(2)(B) requires the Plaintiffs' claims against the putative Defendants to contain a common question of law or fact. The Honorable Judge Tharp of the Northern District of Illinois, issued an opinion stating that joinder was proper because the Plaintiff "allege[d] in its complaint that the Defendants participated in the swarm simultaneously and that it observed the Defendants transferring data from the Video between themselves." Sunlust Pictures, LLC v. Does 1-75, 12 C 1546, 2012 WL 3717768 at *4 (N.D. Ill. Aug. 27, 2012). Judge Tharp also

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316; 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

1  found that the claims against the Doe Defendants clearly contained common questions of law

2  and fact.

> As to the second requirement for joinder, this lawsuit appears to involve questions of law and fact common to all Defendants, including whether Sunlust is a proper copyright holder, whether violations of the Copyright Act have occurred, and whether entering a BitTorrent swarm constitutes willful copyright infringement . . . Rule 20 requires only that "any question of law or fact [be] common to all Defendants," not that *every* question of law or fact be common . . . . Accordingly, joinder is proper here, and the Court denies Doe's motion to sever for improper joinder. Id.

Likewise, all of the Doe Defendants in this case participated in the same swarm. Similar cases in other districts have held the same. "The Plaintiff meets this requirement. In each case, the Plaintiff will have to establish against each putative Defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the Plaintiffs as copyright holders." Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012). The "factual issues related to how BitTorrent works and the methods used by Plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative Defendant." Call of the Wild Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011).

"Here, common questions of law and fact are present. Defendants are all accused of violating the same copyright laws. Additionally, the interconnectedness of using BitTorrent to complete the alleged acts creates common questions of fact. Consequently, we find that this low standard is satisfied." Malibu Media, LLC v. John Does 1-15, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012). The fact that each Doe Defendant may later assert "individual defenses that 'differ wildly'... does not mean that joinder is improper." Id. Therefore, the element of

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

"common questions of law or fact is easily met because the claims asserted against each John Doe Defendant are identical." W. Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9, 16 (D. D.C. 2011). Because Plaintiff's complaint satisfies the requirements of Rule 20, severance should not occur.

## C. The Time Period For Infringement

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded.  Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time.  As the Eastern District of Michigan explained the technology, even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder. Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012).

Here, Plaintiff's investigator in a sworn declaration stated that he received a piece of the movie from the Defendant's IP when they were allegedly distributing it to others. (*See* Dec. of Darrent M. Griffin, filed with Plaintiff's motion for early discovery and Supplemental Dec. of Darren M. Griffin, exhibit 3).

The Southern District of New York in recognizing that the concept of joinder is adaptable to changing technological landscapes impacting the complexity of lawsuits stated, "[w]hile the

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316; 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

period at issue may therefore appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time." <u>Malibu Media, LLC v. John Does 1-5</u>, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012).  The Michigan Court explained that time constraints should not impact that the infringements occurred through a series of transactions.  "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." <u>Patrick Collins, Inc. v. John Does 1-21</u>, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012.)

**D. <u>Joinder Promotes Judicial Efficiency</u>**

Joinder of the Defendants creates judicial efficiency, particularly at this stage of the litigation process and is beneficial to the Doe's in this case.  "[J]oinder at this stage is . . . in the interest of convenience and judicial economy [and] does not create any unnecessary delay nor does it prejudice any party. Rather, severance is more likely to cause delays and prejudice [Plaintiff] and future named Defendants alike." <u>First Time Videos, LLC v. Does 1-500</u>, 276 F.R.D. 241, 252-53 (N.D. Ill. 2011).  The Eastern District of Pennsylvania has addressed this issue and stated, "Consolidating early discovery for the purpose of determining the scope of claims and defenses will foster judicial economy." <u>Raw Films, Ltd. v. John Does 1-15</u>, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012).  Allowing permissive joinder, at least for the initial stages of these cases, allows them to be managed in an economical and efficient manner for all parties, including the court, Plaintiff, and notably the Defendants.   "The potential case management issues are speculative and should be addressed when, and if, they arise. Trading the uncertainty of possible problems from multiple defenses for the certainty of multiple lawsuits does not make

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

practical sense, at this point, and seems contrary to the potential economies Rule 20 hopes to achieve. See e.g., <u>Voltage Pictures, LLC v. Does 1-43</u>, 2013 WL 1874862, *4 (N.D. Ohio 2013) (Court concluded that, at the preliminary stage of litigation, the Plaintiff pleaded sufficient facts to support permissive joinder, and finding that a "wait and see" approach was appropriate as to whether the Defendants offered unique defenses, requiring "mini-trials.")." <u>Malibu Media v. John Does 1-30</u>, Civ. A. 12-13312, Doc. 61, (E.D. Mich. May 16, 2013).

With respect to the benefits the Plaintiff received, that is admitted.  A single consolidated case, results in more efficient management of paperwork and an obvious financial savings.  With respect to the Defendants, what joinder permits is for Plaintiff to manage cases at a reduced cost and to accept settlements in lesser amounts, in particular as costs and fees for willful infringement are properly assessed against Defendants.  If Plaintiff was forced to proceed against Defendants individually, without a doubt costs and fees would be higher and settlements would be higher.  The burden on the Court to manage hundreds of individual lawsuits would far exceed the amount of fee's that would be paid to the court in filing fees to manage the cases.

Finally, it should be noted that Plaintiff does not seek to pursue everyone who has unlawfully downloaded and distributed its movie.  That is wholly unnecessary and not Plaintiff's objective.  These lawsuits represent no more than 20% of those infringing Plaintiff's work (exhibit 3 ¶39).  Plaintiff's purpose is to make it known to habitual infringers that stealing movies is wrong and using peer to peer technologies to acquire and distribute content cannot be accomplished with impunity. If joinder is not permissible then Plaintiff will be hindered by an insurmountable administrative and cost obstacle. In effect, Plaintiff will have a right without a remedy.  In the event of severance, Plaintiff estimates it will be able to afford to make enquiries with regards to

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316; 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

more than 3% of the infringements taking place in this District. This will result in no more than 50 individual lawsuits per month in the Western District of Washington for this movie. Plaintiff fears this will not be a sufficient number to deter continued infringement of this movie (Dec.Counsel, ¶ 13, exhibit 2). Furthermore, the financial strain and impact on already limited Court resources is not practical nor desirable.

### E. Joinder is not Being Used to Wrest Improvident Settlements From Pro Se Litigants

Plaintiff has not engaged in any alleged abusive conduct (exhibit 4; communications with alleged Defendants filed under seal and Amended corporate disclosures and corporate docs) and should not be automatically held responsible for alleged abuses by others in the industry.  The Plaintiff is intent on using joinder to find those responsible for the infringement of Plaintiff's intellectual property and has taken measures to allow individuals contacted by their ISP's to provide documentation of their professed innocence which would result in their dismissal from the case with prejudice. (Dec.Counsel, ¶7 exhibit 2).  At no time has Plaintiff intended to make any threats to individuals associated with these cases and views the filing of these cases as an educational tool to help those affected understand the seriousness of copyright infringement and how it can be avoided in the future either by securing an internet connection or explaining to individuals that downloading off of websites such as The Pirate Bay or like sites is considered copyright infringement and should not be utilized on future occasions.( Dec.Counsel, ¶¶ 6-8. Exhibit 2).

Plaintiff certainly understands the Court's concern in light of <u>Ingenuity 13 LLC v. John Doe</u>, No. 2:12-cv-9333-ODW(JCx) (C.D. Cal. May 6, 2013) and other such cases, however the Plaintiff in the cases at bar is a legitimate film company involved in mainstream media as

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle,WA 98154
Office: 206-682-7975

1  documented in (exhibit 6) and their sole purpose is to protect their copyrights from infringers

2  moving forward.  This is distinguished from Ingenuity 13, LLC in which Plaintiff's Principals

3  created shell companies whose sole purpose was to enforce the copyrights of pornographic films.

4  Further, since the film content involved in Id. was of pornographic nature, the Plaintiffs allegedly

5  used the threat of embarrassment to coerce settlements and fraudulent copyright assignments to

6  prosecute their claims.  In the Plaintiff's cases there are no intended threats of embarrassment,

7  just the mere education of individuals who may find themselves on the receiving end of a letter

8  from their ISP and a chance for a Doe Defendant to take responsibility if they believe they are at

9  fault, which makes Plaintiff whole and covers costs of enforcing copyrights. (Dec. Counsel, ¶¶ 6-

10 8, exhibit ) Additionally Plaintiff is not the producer of pornographic movies. Its film is available

11 to purchase through mainstream distribution outlets such as local video outlets. It is a movie that

12 families and friends may sit together, watch and enjoy. There is a substantial difference in

13 equities in this regard compared to pornographic movies. Mainstream movies such as Plaintiff's

14 take many months (sometimes years) to plan and produce. They involve the combined effort of

15 skilled professionals from the creative industries. The rampant theft of Plaintiff's movies has a

16 direct effect on people such as sound engineers, writers and cameramen who work tirelessly to

17 produce great movies. These are not film studios or wealthy actors and actresses found on the red

18 carpet at premieres and film festivals. They are ordinary individuals and many of them earn an

19 average salary. When piracy occurs and goes undeterred, there is less money available for

20 reinvestment which leads to fewer movies being produced. This results in fewer jobs and affects

21 the economy as a whole. Piracy is not a victimless crime and lawsuits such as this are the only

22 effective remedy available to Plaintiff.

23 Plaintiffs Response Order to Show Cause
   13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
   13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319

24

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

## IV. SUMMARY OF COMMUNICATION WITH DOES

Once the subpoenas for early discovery were granted, Plaintiff immediately served the subpoenas asking for ISP subscriber information on the various ISP's. (Dec.Counsel, ¶3 , exhibit 2) Comcast and Century Link, the two largest ISP providers in Western Washington were responsive and Century Link has provided data in several cases, while Comcast, the largest provider, has stated that data in some cases was not going to be delivered until June 20th. The two other major ISP's Frontier Communications and Wave Broadband have not provided any data at this time, nor have they stated when compliance with the subpoenas was to occur. (Dec.Counsel, ¶5, exhibit 2).  Once Century Link and Comcast received the subpoenas, they began notifying their subscribers of the various copyright infringement cases which in turn triggered a wave of phone calls and questions from alleged doe Defendants even though they have not been named as parties in these cases.

When a subscriber called Plaintiff to inquire about the ISP letter, the subscriber was told of the movie allegedly downloaded, their right to contact their own attorney, their right to file a motion to quash and directed to an educational FAQ website[5] to educate themselves about copyright infringement and help them make a decision on what action to take next.  Often times Doe Defendants were directed to the King County Bar Association or other legal aid offices so that they could obtain legal assistance.  At no point were doe Defendants ever threatened, abused, or coerced to settle their cases. (Dec.Counsel, ¶¶ 6-8, exhibit 2).  Various times after talking with other attorneys or doing their own research the doe Defendants would call up and

---

[5] www.frontierlawgroup.wordpress.com

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle,WA 98154
Office: 206-682-7975

1   ask to settle their case as they did not wish to be a party in the case moving forward. At no point

2   were Doe Defendants contacted by phone unless Plaintiff was returning a phone call and any

3   demand letters that were sent out were minimal as Plaintiff has not received or had a chance to

4   process data that has been received on Doe Defendants. (Dec.Counsel, ¶¶ 6-8, exhibit 2)

5   Further Doe Defendants were told they would be dismissed from the case if they could provide

6   evidence or some documentation that confirmed they were not the party responsible for the

7   infringement or they could identify and sign a declaration stating that there was another party

8   responsible for the infringement. (Dec.Counsel, ¶ 7 exhibit 2).

9        It is not the Plaintiff's intent to sue and harass innocent parties however, Plaintiff does need

10   to seek redress against those responsible for the infringement. If a party calls up and can identify

11   the infringer even if they are not the party responsible, Plaintiff will seek to pursue action against

12   that party if substantial documentation is presented. At this time no parties have been named as

13   possible party's to the cases as Plaintiff is still awaiting data and is conducting discovery to

14   determine who they may want to pursue as a named party. (Dec.Counsel, ¶5, exhibit 2)  Finally,

15   for those individuals that have chosen to settle their case or provided documentation that they are

16   not the party responsible for infringement, they are awaiting to be dismissed from the cases as

17   soon as time will allow and the stay is lifted by the Court.

18

19

20

21

22

23

24

Plaintiffs Response Order to Show Cause
13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313
13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

1

2

3

### V.  <u>CONCLUSION</u>

4

For the foregoing reasons, as well as for the reasons, Plaintiff respectfully requests that the

5

Court allow the cases to continue as filed and not sever the cases into individual cases at this

6

time as joinder is proper.

7

8

Dated: May 24, 2013

9                                              Respectfully submitted,
                                               FRONTIER LAW GROUP, PLLC

10                         By:    /s/ Richard J. Symmes
                                  Richard J. Symmes, Esq. WSBA #41475

11                                1001 4th Ave, #3200
                                  Seattle, WA 98154

12                                Tel:  (206) 682-7975
                                  Fax:  (206) 424-4691

13                                Email:  Richard@symmeslaw.com

14

15

16

17

18

19

20

21

22

23       Plaintiffs Response Order to Show Cause
         13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313        Frontier Law Group, PLLC
         13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319                  1001 4th Ave, Suite 3200
24                                                                                   Seattle, WA 98154
                                                                                     Office: 206-682-7975

1
2
3
4
5
6
7
8
9
10
11

## CERTIFICATE OF SERVICE

12      I hereby certify that on May 24, 2013, I electronically filed this document with the Clerk
13 of the Court using the CM/ECF electronic filing, which will provide notice to all counsel of
record herein.

14
15              /s/ Richard J. Symmes
16              Richard J. Symmes, Esq. WSBA #41475
                Attorney for Plaintiff
17
18
19
20
21
22
23 Plaintiffs Response Order to Show Cause
   13-00307; 13-00308; 13-00309; 13-00310; 13-00311; 13-00312; 13-00313          Frontier Law Group, PLLC
24 13-00314; 13-00315; 13-00316, 13-00317; 13-00318; 13-00319                    1001 4th Ave, Suite 3200
                                                                                 Seattle, WA 98154
                                                                                 Office: 206-682-7975